UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELINA PERALTA and RIGOBERTO MONJARAZ, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WONDERFUL CITRUS PACKING LLC,<br><br>Defendant. | No. 1:15-cv-00263-TLN-JLT<br><br><br><br>**ORDER** |

This matter is before the Court on Plaintiff Marcelina Peralta and Rigoberto Monjaraz's (collectively "Plaintiffs") Motion for Order Granting Class Certification. (ECF No. 39-1.) Defendant Wonderful Citrus Packing, LLC ("Defendant"), opposes Plaintiffs' motion, (ECF No. 41), and Plaintiffs have replied, (ECF No. 42). After carefully considering the parties' briefing and for the reasons set forth below, the Court hereby DENIES Plaintiffs' motion, (ECF No. 39).

///
///
///
///
///

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are seasonal field workers who harvested citrus grown at various locations in Kern County for Defendant between 2013 and the present. (Pls.' Second Am. Compl., ECF No. 28 at 1–3.) Defendant employs between 80 and 110 farm labor contractors to supply field workers, such as Plaintiffs. (Pls.' Mot. To Cert. Class, ECF No. 39-1 at 6.) Plaintiffs allege they were paid on a piece rate basis, which did not include compensation for non-piece work activities, such as standby time, rest time, travel time, or reporting time. (ECF No. 28 at 1–2.)

Plaintiffs also allege that "[i]n December 2016, Defendant made safe harbor payments to all workers who performed piece work on any of its crops, including 27,351 putative class members, pursuant to California Labor Code 226.2(b). (ECF No. 39-1 at 6–7.) Plaintiffs allege the safe harbor payments represented the time period of July 1, 2012 through December 31, 2015, and the total amount of safe harbor payments was $2,325,700.50. (ECF No. 39-1 at 6.)

Plaintiffs filed a Class Action Complaint alleging failure to pay minimum wages in violation of California Labor Code Section 1197, unfair competition in violation of California Business and Professions Code Section 17200, failure to provide accurate wage statements in violation of California Labor Code Section 226, and failure to pay all wages upon termination in violation of California Labor Code Sections 201 and 202, and failure to comply with the Migrant and Seasonal Agricultural Workers Protection Act, 29 U.S.C. § 1801, *et seq.* ("AWPA"). (ECF No. 28 ¶¶ 14, 20, 24, 31, 39, 50, 52.)

Plaintiffs now move to certify a class of field workers. (ECF No. 39-1.) Plaintiffs allege there are "at least 28,889 putative class members." (ECF No. 39-1 at 6.)

## II. STANDARD OF LAW

Class certification is governed by Federal Rule of Civil Procedure 23 ("Rule 23"). "Parties seeking class certification bear the burden of demonstrating that they have met each of the four requirements of [Rule] 23(a) and at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011) (citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001)).

///

Federal law requires a party seeking class certification to establish:

> the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "The typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. of Nw. v. Equal Employ. Opp. Comm'n*, 446 U.S. 318, 330, 100 S. Ct. 1698, 1706 (1980)).

The party must also show the action is maintainable under Rule 23(b)(1)-(3). Fed. R. Civ. P. 23(b). Plaintiffs rely solely on Rule 23(b)(3). (ECF No. 39-1 at 10.) Rule 23(b)(3) states:

> [a] class action may be maintained if Rule 23(a) is satisfied and if: . . . (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

### III.    ANALYSIS

Plaintiffs argue all the requirements of Rule 23 are satisfied for the putative class.[1] (ECF No. 39-1 at 5.) Defendant responds that Plaintiffs have not met their burden for class certification as to several Rule 23 requirements. (Def's Opp. to Pls.' Mot. To Cert. Class, ECF No. 41 at 8.) The Court will address each of the Rule 23 requirements in turn.

1.    Rule 23(a)

Rule 23(a) provides four prerequisites that must be met before a class may be certified. Fed. R. Civ. P. 23(a). Those prerequisites are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614, 117 S. Ct. 2231 (1997)).

---

[1] Plaintiffs list several putative subclasses: Field Workers Class, Restitution Class, Wage Statement Class, and Final Wages Class. (Pls' Not. of Mot. to Cert. Class, ECF No. 39 at 2.) However, Plaintiffs do not analyze the subclasses separately to ensure each subclass meets the Rule 23 requirements. (ECF No. 39-1.) Instead, Plaintiffs apply the Rule 23 framework to all 28,889 putative class members. (ECF No. 39-1 at 7.) "[A] class may be divided into subclasses that are each treated as a subclass under this rule." Rule 23(c)(5). Each subclass "must independently meet the requirements of Rule 23 for the maintenance of a class action." *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981)). Because Plaintiffs bear the burden of showing that the Rule 23 requirements have been met, the Court will analyze Rule 23 as it applies to the entire putative class, in line with Plaintiffs' motion, rather than separate subclasses. *Id*.

a. *Numerosity*

The first Rule 23(a) prerequisite is numerosity. Fed. R. Civ. P. 23(a)(1). The class must be "so numerous that joinder of all members is impracticable." *Id.* The numerosity requirement does not impose a precise numerical threshold. *Gen. Tel. Co. of the Nw*, 446 U.S. at 330. Here, Plaintiffs allege there are at least 28,889 putative class members. (ECF No. 39-1 at 6.) The parties do not dispute numerosity, and the Court finds the numerosity requirement is met because the putative class is so numerous that joinder of all its members is impracticable. *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) (finding numerosity to be satisfied by a 15,000-member class).

b. *Commonality*

The second Rule 23(a) prerequisite is commonality. Fed. R. Civ. P. 23(a)(2). There must be "questions of law or fact that are common to the class." *Id.* Commonality exists when class members' claims depend upon a common contention that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Further, the "rigorous analysis" under Rule 23(a) "sometimes [requires] the court to probe behind the pleadings before coming to rest on the certification question." *Id.* at 350–51 (quotations omitted.) "[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class," and "a district court *must* consider the merits" if they overlap with Rule 23(a)'s requirements. *Ellis*, 657 F.3d at 981. As such, a court must resolve any factual disputes "to determine whether there was a common pattern and practice that could affect the class *as a whole*." *Id.* at 983; *see also Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013); *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 604 (E.D. Cal. Oct. 8, 2015) ("In the wage and hour context, the inquiry is whether the entire class was injured by the same allegedly unlawful wage and hour practice."); *Burnell v. Swift Transportation Co of Arizona, LLC*, No. EDCV10809VAPSPX, 2016 WL 2621616, at *2 (C.D. Cal. May 4, 2016) (stating plaintiffs must show significant proof the employer "had a general policy of not paying minimum wage to its drivers.").

Plaintiffs argue that all putative class members' claims hinge on two common contentions: (1) Defendant was a joint employer, and (2) class members were not paid all minimum wages owed to them for rest periods and other nonproductive time. (ECF No. 39-1 at 7.) Moreover, Plaintiffs argue that Defendant's safe harbor payments made pursuant to California Labor Section 226.2(b) ("Section 226.2(b)") support those contentions. (Pls.' Reply, ECF No. 42 at 4–7.) Plaintiffs argue the fact that Defendant made safe harbor payments "in and of itself" leads to the class-wide conclusion that Defendant class members all the minimum wages owed to them for rest periods and other nonproductive time. did not pay the putative (ECF No. 42 at 5.)

Defendant responds that its safe harbor payments are insufficient to demonstrate a policy or practice that affected the entire putative class. (ECF No. 41 at 16–17.) Defendant argues the safe harbor payments do not support the contention that Defendant failed to pay the putative class members all minimum wages owed to them because Defendant made the payments based on an "arbitrary formula of 4% gross piece rate wages earned" between July 1, 2012 through December 31, 2015, under Section 226.2(b)(1)(B). (ECF No. 41 at 16–17.) Defendant further emphasizes that it made the safe harbor payments without knowing if any of the recipients were in fact owed any wages. (ECF No. 41 at 17) (citing Laffite Decl., ECF 41-5 at 2).

It is unclear what, if any, evidentiary value Defendant's safe harbor payment offers "to determine whether there was a common pattern and practice that could affect the class as a whole." *Wang*, 737 F.3d at 544. Section 226.2 mandates that employers paying any piece-rate compensation must also pay an hourly rate of at least the applicable minimum wage for all hours worked, including compensation for rest and nonproductive time. Cal. Lab. Code § 226.2(a). Under the safe harbor provision of § 226.2(b), an employer that complies with the statutes requirements and pays "all amounts due to employees for uncompensated rest/[non-productive] time for the period of July 1, 2012 to December 31, 2015, may assert an affirmative defense to an employee's 'claim or cause of action' arising out of such uncompensated rest/[non-productive] time 'for time periods prior to and including December 31, 2015.'" *Jackpot Harvesting Co. v. Superior Court*, 26 Cal. App. 5th 125, 135 (Ct. App. 2018) (quoting Cal. Lab. Code § 226.2(b)).

In other words, the safe harbor provision allows employers to make back-payments to workers for unpaid rest breaks and other nonproductive time in exchange for an affirmative defense against liability. Cal. Labor Code § 226.2(b)(1)(B).

Plaintiffs cite a single Northern District of Illinois case to support their argument that safe harbor payments demonstrate commonality because "[i]t is axiomatic, under federal law, an affirmative defense necessarily admits to allegation of the complaint." (ECF No. 39-1 at 13) (citing *Amelio v. Yazoo Mfg. Co.*, 98 F.R.D. 691, 692 (N.D. Ill. July 29, 1983)). The *Amelio* court, however, stated affirmative defenses "generally" — not "necessarily" — admit the matters in the complaint. *Amelio*, 98 F.R.D. at 693. Further, the *Amelio* court discussed those defenses in the context of pleading standards, not class certification. *Id.* Finally, the *Amelio* court did not address Section 226.2 or the affirmative defense at issue here. *Id. Amelio* is not persuasive.

Section 226.2 does not state that an employer admits liability by making safe harbor payments. Cal. Lab. Code § 226.2. Rather, part of the purpose of the safe harbor provision is to avoid questions of liability. Cal. Lab. Code § 226.2(b) ("[T]he employer and any other person shall have an affirmative defense to any claim or cause of action . . . based solely on the employer's failure to timely pay the employee the compensation due for rest and recovery periods and other nonproductive time."). Although Plaintiffs argue the safe harbor payments definitively show that Defendant failed to pay putative class members all minimum wages owed to them, it is equally possible Defendant made safe harbor payments solely to avoid the uncertainty associated with litigation. The latter alternative says nothing about the actual commonality between putative class members. Defendant's safe harbor payments alone do not satisfy commonality because those payments do not necessarily demonstrate Defendant engaged in "a common pattern and practice that could affect the class *as a whole.*" *Ellis,* 657 F.3d at 983.

Plaintiffs' lack of evidence beyond the safe harbor payments further weakens their argument for commonality. Defendant employs between 80 and 110 Farm Labor Contractors ("FLCs") who supply and operate crews of field workers. (ECF No. 39-1 at 6.). Both named Plaintiffs worked only on a single crew operated by FLC Camacho. (ECF No. 28 ¶ 19.) Both named Plaintiffs state they "believe" Defendant failed to pay all minimum wages owed to

6

workers on other crews. (ECF No. 39-2 ¶¶ 3, 5; ECF No 39-3 ¶¶ 3, 5.) In response, Defendant provides declarations from putative class members on various other crews that contradict Plaintiffs' statements. For example, the declarations suggest that FLCs operating other crews did pay their workers hourly wages for rest breaks and other nonproductive time. (*See e.g.* Capilla Decl., ECF No. 41-3, Ex. H at 18 ¶ 3; Chavez Decl., ECF No. 41-3, Ex. I at 25 ¶ 3; Lemus Decl., ECF No. 41-3, Ex. K at 38 ¶ 3; Manzo Decl., ECF No. 41-4, Ex. M at 6 ¶ 16; Ortega Decl., ECF No. 41-4, Ex. N at 12 ¶ 3; Xinol Decl., ECF No. 41-4, Ex. R at 34 ¶ 3.)

Plaintiffs bear the burden of demonstrating that Rule 23(a) requirements have been met. *Ellis*, 657 F.3d at 979–80. Rule 23(a)'s commonality requirement depends on "the capacity of a classwide proceeding to generate common answers." *Dukes*, 564 U.S. at 350 (quotation omitted). Here, Plaintiffs have not provided sufficient evidence to support their theory that Defendant had a class-wide pattern or practice of failing to pay all minimum wages owed. Indeed, the weight of the proffered evidence contradicts the existence of such a practice, as Defendant provides considerable evidence as to differences that exist among putative class members. *Id.* ("Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."); *see e.g.*, *Burnell v. Swift Transportation Co of Arizona, LLC*, No. ED-cv-10809-VAP-SPX, 2016 WL 2621616, at *5 (C.D. Cal. May 4, 2016) (finding "[p]laintiffs cannot show that Swift had a general policy of preventing drivers from taking meal and rest breaks, and because there is evidence in the record of drivers taking meal and rest breaks without interference . . . [p]laintiffs cannot demonstrate liability in a manner capable of class–wide resolution."); *Garcia v. Sun Pac. Farming Co-op.*, No. CVF 06-0871 LJO TAG, 2008 WL 2073979, at *12 (E.D. Cal. May 14, 2008), *aff'd sub nom.*, 359 F. App'x 724 (9th Cir. 2009) ("The Court finds that due to the conflicting evidence on the very wage and hour violations alleged in the complaint, within and among the various crews, the plaintiffs have not shown commonality."). Accordingly, the Court finds Plaintiffs have not satisfied Rule 23(a)'s commonality requirement.

c. *Typicality*

The third Rule 23(a) prerequisite is typicality. Fed. R. Civ. P. 23(a)(3). The representative plaintiff's claims must be "typical of the claims . . . of the class." *Id.* The purpose

of the typicality requirement is to ensure the representative plaintiff and the class members' interests are aligned. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). "Under [Rule 23(a)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin*, 617 F.3d at 1175 (citation omitted). As with the commonality requirement, "[a] preliminary inquiry into the merits is sometimes necessary to make a meaningful determination of class certification issues." *Garcia*, 2008 WL 2073979 at *13.

Plaintiffs contend that typicality is satisfied because Plaintiffs "allege the same principal injuries" suffered by the rest of the class: failure to receive all minimum wages owed. (ECF No. 39-1 at 8.) Defendant argues that Plaintiffs' claims are not typical of the putative class because (1) Plaintiffs themselves did not take rest breaks, (2) Plaintiffs accepted safe harbor payments from Defendant, and (3) Plaintiffs' claims relating to nonpayment for non-productive time directly contradicts allegations from other putative class members who were paid for non-productive time. (ECF No. 41 at 22–24.) This last argument is persuasive and dispositive.

Plaintiffs allege that putative class members did not receive minimum wages for various compensable non-piece work activities, such as 1) waiting before beginning to work in the field; 2) waiting before being told that there is no work for the day; 3) walking or traveling from one field to another during a workday; and 4) taking rest periods. (ECF No. 28 at 2.) However, Plaintiffs do not provide any evidence that "other members have the same or similar injury." *Wolin*, 617 F.3d at 1175. Defendant, on the other hand, provides declarations from putative class members that directly refute Plaintiffs' claims. (Capilla Decl., ECF No. 41-3, Ex. H at 18 ¶ 3; Chavez Decl., ECF No. 41-3, Ex. I at 25 ¶ 3; Lemus Decl., ECF No. 41-3, Ex. K at 38 ¶ 3; Manzo Decl., ECF No. 41-4, Ex. M at 6 ¶ 16; Ortega Decl., ECF No. 41-4, Ex. N at 12 ¶ 3; Xinol Decl., ECF No. 41-4, Ex. R at 34 ¶ 3.) Based on the declarations provided by Defendant and the lack of

evidence from Plaintiffs, the failure to receive minimum wages for the aforementioned non-piece work activities appears to be "unique to the named plaintiffs." *Id.*; *Garcia*, 2008 WL 2073979 at *13 (finding that class representative's claims are not typical because there was "significantly conflicting evidence as to the merits of whether or not the violations occurred" and "violations did not occur as to some class members."). Accordingly, the Court finds Plaintiffs have not satisfied Rule 23(a)'s typicality requirement.

d. *Adequate Representatives*

The final Rule 23(a) prerequisite is adequacy of representation. Fed. R. Civ. P. 23(a)(4). "[T]he representative parties [must] fairly and adequately protect the interests of the class." *Id.* In determining whether that requirement is met, the Court asks two questions: (1) do the representative plaintiff and his counsel have any conflicts of interest with other class members and (2) will the representative plaintiff and his counsel prosecute the action vigorously on behalf of the class? *Staton*, 327 F.3d at 957 (citing *Hanlon*, 150 F.3d at 1020).

Defendant argues that Plaintiffs are not adequate class representatives because of their lack of involvement and because they have not supervised their counsel in any meaningful way. (ECF No. 41 at 24–25) (citing *Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001). *Berger*, however, dealt with securities fraud litigation, which is governed by the Private Securities Litigation Reform Act ("PSLRA"). *Berger*, 257 F.3d at 483. The *Berger* court found "the PSLRA raises the standard adequacy threshold" in the securities fraud context. *Id.* at 483 ("Any lingering uncertainty, with respect to the adequacy standard in securities fraud class actions, has been conclusively resolved by the PSLRA's requirement that securities class actions be managed by active, able class representatives who are informed and can demonstrate they are directing the litigation.") The raised standard for adequacy applied in *Berger* is not applicable here.

Plaintiffs argue adequacy is satisfied because they have met both requirements (1) there are no conflicts of interest between Plaintiffs and other class members, and (2) Plaintiffs are willing to prosecute the action vigorously on behalf of the class. (ECF No. 39-1 at 9.) Plaintiffs state they are willing to participate in the litigation and understand the nature of their claims. (Peralta Decl., ECF No. 39-2 ¶¶ 5–6; Monjaraz Decl., ECF No. 39-5 ¶¶ 5–6.) (ECF.) *Vegas*

9

*Sands, Inc.*, 244 F.3d at 1162 ("The record indicates clearly that [the class representative] understands his duties and is currently willing and able to perform them. The Rule does not require more."). Plaintiffs also argue they are represented by counsel with substantial class action experience. (Karasik Decl., ECF No. 39-4 ¶¶ 3–7; Gomez Decl., ECF No. 39-6 ¶¶ 3–5.) "The competence of counsel seeking to represent a class is also an appropriate consideration under Rule 23(a)(4)." *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (noting plaintiffs' lawyers were "experienced in class actions."). Plaintiffs have met the Rule 23(a) adequacy requirement.

Plaintiffs have not met two requirements under Rule 23(a), commonality and typicality. Accordingly, the Court find Plaintiffs have not satisfied Rule 23(a).

2. Rule 23(b)

A proposed class action must also fit within at least one of the three categories of class actions laid out in Rule 23(b). Fed. R. Civ. P. 23(b); *Dukes*, 564 U.S. at 345. Here, Plaintiff seeks certification solely under Rule 23(b)(3). (ECF No. 39-1 at 10.) Rule 23(b)(3) provides the court may certify a class if the court finds that "the questions of law and fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are commonly known as predominance and superiority. *See Amchem Prod., Inc.*, 521 U.S. at 615.

To meet Rule 23(b)(3)'s requirement for predominance, common questions of law and fact must predominate over individual questions. Fed. R. Civ. P. 23(b)(3). The predominance inquiry assesses whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc.*, 521 U.S. at 623. "This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)," but it goes a step further and focuses on the relationship between common and individual issues. *Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (citation omitted).

Here, the Court has determined Plaintiffs have not met their burden to satisfy the Rule 23(a) requirements, including commonality. The predominance requirement is even more stringent than the commonality requirement, and the analysis under Rule 23(b)(3) "presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)." *Hanlon*, 150 F.3d at 1022; *Amchem Prod., Inc.*, 521 U.S. at 609. ("Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions.") Because Plaintiffs failed to demonstrate commonality under Rule 23(a), they cannot demonstrate that common questions predominate under Rule 23(b)(3)'s more stringent standard.

Plaintiffs have not met one of Rule 23(b)(3)'s two requirements, predominance, so the Court will not analyze the second requirement, superiority. Accordingly, the Court find Plaintiffs have not satisfied Rule 23(b)(3).

### IV. CONCLUSION

For the foregoing reasons, the Court hereby DENIES Plaintiffs' Motion for Class Certification, (ECF No. 39). The parties are hereby ordered to file a Joint Status Report within 30 days of this Order.

IT IS SO ORDERED.

Dated: January 02, 2019

Troy L. Nunley
United States District Judge